JOSEPH H. HUNT
Assistant Attorney General
ALEX G. TSE
United States Attorney
MARCIA BERMAN
Assistant Branch Director
KAREN S. BLOOM
Senior Counsel
STUART J. ROBINSON, CA Bar No. 267183
R. CHARLIE MERRITT
Trial Attorneys
U.S. Department of Justice, Civil Division
450 Golden Gate Ave.
San Francisco, CA 94102
Phone: (415) 436-6635; Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL EDUCATION ASSOCIATION, et al., | Case No. 3:18-cv-05173-LB |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| BETSY DEVOS, in her official capacity as Secretary of Education, et al., | Date:   Dec. 14, 2018<br>Time:   9:30a.m.<br>Place:  San Francisco, CA<br>Judge:  Hon. Laurel Beeler |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    A.    Plaintiffs Fail To Establish Standing Based On An Informational Injury ............ 2

    B.    Plaintiffs' Asserted Future Injury Is Not Certainly Impending Or Substantially Likely To Occur .............................................................................. 5

    C.    Plaintiffs Have Failed To Allege That The Department Caused Any Injury ....... 8

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                                           **Page**

*Animal Legal Def. Fund. v. Espy*,
  23 F.3d 496 (D.C. Cir. 1994) .................................................................................................. 3

*Backus v. Gen. Mills, Inc.*,
  122 F. Supp. 3d 909 (N.D. Cal. 2015) ..................................................................................... 8

*Bensman v. U.S. Forest Serv.*,
  408 F.3d 945 (7th Cir. 2005) ................................................................................................... 4

*Cary v. Hall*,
  No. 05-cv-4363, 2006 WL 6198320 (N.D. Cal. Sept. 30, 2006) ............................................. 2

*Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd.*,
  198 F.3d 935 (D.C. Cir. 1999) ................................................................................................. 4

*Churchill County v. Babbitt*,
  150 F.3d 1072 (9th Cir. 1998) ................................................................................................. 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................................ 5, 6, 7

*Covington v. Jefferson Cty.*,
  358 F.3d 626 (9th Cir. 2004) ................................................................................................ 7, 8

*Food & Water Watch, Inc. v. Vilsack*,
  79 F. Supp. 3d 174 (D.D.C. 2015) ........................................................................................... 7

*Friends of Animals v. Jewell*,
  115 F. Supp. 3d 107 (D.D.C. 2015) ......................................................................................... 3

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ................................................................................................. 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................ 5, 9

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012) ................................................................................................... 9

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) ............................................................................................... 3

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

*Reytblatt v. U.S. Nuclear Regulatory Comm'n*,
    105 F.3d 715 (D.C. Cir. 1997) .................................................................................... 4, 8

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ............................................................................................ 9

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ............................................................................................................ 6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016),
    *as revised* (May 24, 2016) ................................................................................................ 2

*Strubel v. Comenity Bank*,
    842 F.3d 181 (2d Cir. 2016) .............................................................................................. 3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................................ 1

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ........................................................................................................ 5

*Wilderness Soc'y, Inc. v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) ................................................................................... 2, 3, 4

**STATUTES**

20 U.S.C. § 1001 ......................................................................................................................... 3

20 U.S.C. § 1002 ......................................................................................................................... 3

**REGULATIONS**

81 Fed. Reg. 92,232 (Dec. 19, 2016) ......................................................................................... 3

83 Fed. Reg. 31,296 (July 3, 2018) ........................................................................................ 5, 6

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

## INTRODUCTION

Plaintiffs challenge the procedure by which the Department of Education ("Department") promulgated modifications to its distance education regulations. As Defendants explained in their motion to dismiss, ECF No. 23 ("MTD"), such a challenge to an alleged "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." MTD at 10 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Recognizing that their alleged procedural injury is insufficient to create standing, Plaintiffs' opposition brief, ECF No. 26 ("Opp."), focuses on arguing that Plaintiffs have suffered more than a procedural injury— i.e., Plaintiffs claim that they "are *injured* because they have been deprived of information to which the Department has conferred . . . a legal right." *Id*. at 7. The flaw in Plaintiffs' argument, however, is that the "legal right" on which they rely does not exist. Defendants' motion explained that "[c]ourts have recognized an Article III injury where a plaintiff has been deprived of information to which they have a *statutory* right." MTD at 10-11 (emphasis added). But Plaintiffs here do not allege that the relevant statute, the Higher Education Act ("HEA"), confers upon them any right to information. Instead, Plaintiffs attempt to create a new standing doctrine, based on an alleged deprivation of information provided for by an agency, rather than Congress. No court has found standing based on such a doctrine, and Plaintiffs offer no persuasive reason for the Court to do so here.

Perhaps because they recognize the weakness of their "informational injury" argument, Plaintiffs also assert that they "do not rest [solely] on the injury caused by only the failure to receive information," and that they have suffered more than just "informational injuries." Opp. at 7 n.4. Beyond such "informational injuries," they claim, they have suffered "injuries caused by the concrete risk of harm that results from failure to receive the information." *Id.* at 7-8, n.4. But Plaintiffs' alleged injuries depend upon multiple layers of speculation, including that there exists information about programs relevant to the individual Plaintiffs that would have been disclosed absent the delay, that student/s would have relied on this information, and that this information would have imminently affected Plaintiffs' decisions about what program to attend.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

1

1  Such allegations fall far short of demonstrating the type of injury that is "actual or imminent,"
2  as required to demonstrate Article III standing.  That the Department recognized in its
3  rulemaking the possibility of some injury to students does not mean that Plaintiffs have satisfied
4  the Article III standing requirements to bring this lawsuit.  And for many of the same reasons
5  that Plaintiffs fail to allege an injury-in-fact that is concrete and imminent, they also fail to
6  establish that their claimed injury is fairly traceable to the Department's conduct.  Plaintiffs
7  have therefore failed to establish standing, and the Court should dismiss their Complaint for
8  lack of subject-matter jurisdiction.

## ARGUMENT

### A.  Plaintiffs Fail To Establish Standing Based On An Informational Injury

Plaintiffs allege that they have standing because they are "injured" by their having "been deprived of information to which the Department has conferred, through the Final Rule, a legal right." Opp. at 7.  But Plaintiffs themselves recognize that "informational injury generally arises in the context of statutes that grant a statutory right to information," and that the informational injury doctrine exists because *Congress* may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016)). Pursuant to the informational injury doctrine, courts have found an Article III injury where a plaintiff has been deprived of information to which it has a statutory right. *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010); *see also, e.g.*, *Cary v. Hall*, No. 05-cv-4363, 2006 WL 6198320, at *9 (N.D. Cal. Sept. 30, 2006).  And this Circuit has noted that plaintiffs have demonstrated standing by being denied information statutorily required to be disclosed under statutes such as the Federal Election Campaign Act of 1971, the Freedom of Information Act, the Fair Housing Act, the Clean Water Act, and the Federal Advisory Committee Act. *Wilderness Soc'y*, 622 F.3d at 1258.

Plaintiffs do not even attempt to argue that they have been deprived of information to which they have a statutory right.  Nor can they, as no provision of the HEA requires the disclosures sought by Plaintiffs, and neither Plaintiffs' Complaint nor their opposition brief

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

contains any allegation that the HEA confers a statutory right to information. That statute merely requires that an institution be "legally authorized" by a state to receive Title IV funds. 20 U.S.C. § 1001(a)(2); *see id.* §§ 1002(b)(1)(B), 1002(c)(1)(B). The disclosures that Plaintiffs allegedly seek, by contrast, are based solely on a regulation that never went into effect. 81 Fed. Reg. at 92,262-63 (Dec. 19, 2016) ("2016 Rule"). Accordingly, Plaintiffs' alleged lack of information does not constitute the type of injury required to establish standing. *See Wilderness Soc'y*, 622 F.3d at 1260; *see also Friends of Animals v. Jewell*, 115 F. Supp. 3d 107, 113 (D.D.C. 2015) ("[I]nformational standing arises 'only in very special statutory contexts,' where a statutory provision 'explicitly create[s] a right to information.'" (quoting *Animal Legal Def. Fund v. Espy*, 23 F.3d 496, 502 (D.C. Cir. 1994))).

      Plaintiffs argue, in a footnote, that "regulations can provide a basis for informational injury," but they do not cite a single case in which a court found a cognizable informational injury based on a regulation, as opposed to a statute. Opp. at 7-8 n.4. The primary case Plaintiffs cite in support of their theory, *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016), in fact involved a statutory-based right to information, rather than regulatory-based one. In that case, the plaintiff challenged the sufficiency of disclosures provided to her by her credit card company, pursuant to the Truth in Lending Act; the Court expressly described the plaintiff's right to the disclosures as statutorily-conferred. *Id.* ("where, as here, Congress has statutorily conferred legal interests on consumers . . . .").

      The support from Plaintiffs' remaining cases is, at best, mere dicta from other Circuits. For example, Plaintiffs claim that *People for the Ethical Treatment of Animals v. U.S. Department of Agriculture*, 797 F.3d 1087, 1103 (D.C. Cir. 2015) ("*PETA*"), "not[ed] that [a] statute or regulation could give rise to [a] legal right to information." Opp. at 8 n.4. But the language cited by Plaintiffs is in a dubitante opinion by Judge Millett, rather than the court's opinion. In any event, Judge Millett's opinion does not, as Plaintiffs contend, note that a regulation could give rise to a legal right to information; it simply notes that the plaintiff in the case had not alleged *any type* of informational injury. *See PETA*, 797 F.3d at 1103. To emphasize the point, Judge Millett identified multiple possible sources of law on which the

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

plaintiff could have, but did not, attempt to base its claim. *See id.* ("Even as alleged by PETA, there is no suggestion that anything in the Animal Welfare Act or any regulation gives PETA any legal *right* to such information."). That opinion says nothing about whether, *if* plaintiff had alleged such a regulatory-based injury, it would be sufficient to confer standing. *See id.* Similarly, Plaintiffs' reliance on *Chiron Corporation & PerSeptive Biosystems v. National Transportation Safety Board*, 198 F.3d 935, 937 (D.C. Cir. 1999), cited in Opp. at 8 n.4, is unavailing because that opinion notes that the regulations on which the petitioners in that case relied did not "speak[] to the rights petitioners seek to enforce." The court in *Chiron Corporation* did not hold that a cognizable injury would have been created if the regulations did create such informational rights.[1] *See id.* This murmuring in other Circuits is simply insufficient to overcome the Ninth Circuit's unequivocal statement that "courts have recognized an Article III injury where a plaintiff has been deprived of information to which it has a *statutory* right." *Wilderness Society*, 622 F.3d at 1258. (emphasis added).

Moreover, even if an agency's regulatory activity could constitute the basis for an informational injury, it would not be sufficient to create standing for Plaintiffs here. The 2016 Rule that Plaintiffs allege granted them a right to certain disclosures never became effective,[2] and thus cannot be said to have itself created an entitlement to any particular information. Without a right to information, Plaintiffs' allegation that it has been deprived of information cannot constitute an injury-in-fact for standing purposes.

---

[1] For similar reasons, the Seventh Circuit's opinion in *Bensman v. U.S. Forest Service*, 408 F.3d 945 (7th Cir. 2005), cited in Opp. at 8 n.4, does not support Plaintiffs' theory of standing. That opinion expressly stated that "an Act of Congress would seem to be necessary to establish a right to information sufficient to confer informational standing." 408 F.3d at 958-59. And while the court "assume[d] for the sake of argument that [the plaintiff's] injury may be based on a regulatory right to information," it did not cite any case in which a regulation had been found sufficient to create an informational injury. *See id.* at 959 (claiming to note authority in other courts indicating that regulations may be sufficient to create a right to information, but relying only on dicta in two cases, including *Chiron*, neither of which actually found an informational injury based on a regulation). And, in any event, *Bensman* ultimately rejected the theory of standing based on the regulation. *Id.* at 960. Nor does *Reytblatt v. U.S. Nuclear Regulatory Commission*, 105 F.3d 715, 721 (D.C. Cir. 1997), cited in Opp. at 9, even mention the informational injury doctrine. *See also* page 8, *infra*.

[2] *See* https://www.federalregister.gov/public-inspection/2018/06/29.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

### B. Plaintiffs' Asserted Future Injury Is Not Certainly Impending Or Substantially Likely To Occur

As discussed in Defendants' motion, MTD at 11-14, Plaintiffs have failed to allege that the challenged agency action has caused them any injury that is "actual or imminent," as required to demonstrate Article III standing, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Plaintiffs' only response is to assert, repeatedly, that they are at "risk," as a result of certain disclosure requirements that have not gone into effect, of choosing a "sub-optimal" educational program. *See* Opp. at 1, 4, 6, 7, 9, 12, 13. In doing so, Plaintiffs confirm that they have not yet suffered any injury as a result of the Delay Rule, and instead ground their theory of standing on possible future injury—i.e., the downstream effects on Plaintiffs' future enrollment and financial aid determinations if the programs Plaintiffs attend or plan to attend (1) engage in conduct that would subject them to the 2016 Rule's disclosure requirements and (2) do not disclose information they would otherwise be required to disclose. But such future injury is only sufficient to confer standing where a plaintiff can show that the "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)). Plaintiffs have failed to carry that burden here.

In attempting to establish that their asserted injuries are sufficient for purposes of Article III, Plaintiffs rely heavily on statements in the Department's Delay Rule addressing potential harm to students as a result of delayed implementation of the 2016 Rule. But in discussing, at a general level, the harms that the 2016 Rule's prophylactic disclosure requirements could prevent, the Department did not establish that Plaintiffs in this case face a certainly impending injury or substantial risk of harm. The Department rather recognized the mere "possibility" that some number of students "*might* not receive disclosures of adverse actions taken against a particular institution or program" and "*may* not receive other information," such as "whether a program meets certain State licensure requirements." 83 Fed. Reg. 31,296, 31,298 (July 3, 2018) (emphases added). In the absence of this information, which the Department recognized "*could*" be helpful to some students, the Department noted that delaying the disclosure requirements

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

5

"*may* lead students to choose sub-optimal programs for their preferred courses of study." *Id*. (emphasis added).

The Department's discussion thus merely identifies the "possible future injur[ies]" associated with the delay, which are "not sufficient" to constitute injury-in-fact. *Clapper*, 568 U.S. at 409 (citation omitted). It does not establish any "concrete risk of harm," and, because it is stated in the abstract, falls well short of demonstrating that Plaintiffs in this case face any such risk. *See* Opp. at 10. Indeed, under Plaintiffs' theory, any student—or even potential student— could rely on the harms identified in the Delay Rule to establish standing to challenge it, regardless of whether that student actually faced any imminent threat of injury as a result of the Delay Rule. This type of purely hypothetical injury will not do. *See Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) ("[T]he 'injury in fact test' requires more than an injury to a cognizable interest. It requires that a party seeking review be himself among the injured."). Plaintiffs' attempts to rely on the language of the Delay Rule to establish their own concrete injury-in-fact are therefore unavailing.

Untethered from the Department's statements in the Delay Rule, Plaintiffs' argument that their asserted risk of choosing "sub-optimal programs for their preferred courses of study," Opp. at 4, is "certainly impending" or "substantially likely" to happen, is inadequate. In order for Plaintiffs to be harmed, the following steps—most of which Plaintiffs do not allege are likely to happen—would need to occur: (1) Plaintiffs' current or future programs become subject to the disclosure requirements on which Plaintiffs rely, i.e., that adverse actions have been or will be initiated against the relevant institution by state entities or accrediting agencies or that the institution has determined that it does not meet state licensing requirements; (2) the programs do not make disclosures to Plaintiffs that the 2016 Rule would have required; (3) Plaintiffs do not obtain the relevant information by other means; and (4) Plaintiffs make the decision to continue attending, or to attend, a program that (i) they otherwise would not have chosen to attend, and (ii) is less optimal for the student than a different program. A finding of standing based on this hypothetical chain of events cannot be reconciled with Article III's requirement that "a plaintiff must show that she herself faces a substantial probability of being injured, and . . . to be

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

sufficiently probabilistic, plaintiff's alleged injury cannot depend on a highly attenuated chain of possibilities or require guesswork as to how independent decisionmakers will exercise their judgment." *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 194 (D.D.C. 2015) (citations omitted).

Plaintiffs themselves acknowledge the conjectural nature of their asserted injury, admitting that any risk of harm is dependent upon the information provided by their current or prospective programs. *See, e.g.*, Complaint for Declaratory and Injunctive Relief, ECF No. 1 ("Compl."), ¶¶ 20-22 (each student alleging that his or her future decisions "could" be affected by institutional disclosures, "depending on the information" provided).[3] Plaintiffs are thus incorrect to argue that their asserted future injury does not depend on any "conditions precedent," Opp. at 12, as the risk of choosing a "sub-optimal program" in the absence of information subject to the 2016 Rule's disclosure requirements is wholly dependent on whether a program is subject to a disclosure requirement, what that disclosure actually reveals, and whether Plaintiffs would have learned the information elsewhere. Plaintiffs do not allege that they have not received information that would have affected their choice of programs. *See* Compl. ¶¶ 20-22. Nor do they allege that they have made any effort whatsoever to obtain the allegedly sought-after information, including through such means as contacting a program by phone or email or querying a publicly available search engine. *See id.*; *see also, e.g.*, *Clapper*, 568 U.S. at 418 ("self-inflicted injuries" do not give rise to standing). Instead, Plaintiffs unpersuasively rely on the theory that the mere failure to receive disclosures, regardless of the content, harms them by exposing them to a risk of making a decision without full information.

The cases Plaintiffs cite for the proposition that the risk of prospective injury can satisfy the requirements of Article III, *see* Opp. at 10, do not support their theory of standing in this case. For example, Plaintiffs cite *Covington v. Jefferson County*, 358 F.3d 626, 638 (9th Cir. 2004), for the proposition that "a 'concrete risk of harm' can be sufficient to confer standing."

---

[3] Although Plaintiffs attach to their opposition brief a number of declarations, these materials do not provide any substantive relevant information about the individual Plaintiffs beyond what is already included in the Complaint. *See* ECF Nos. 26-1, 26-2, 26-3, 26-4, 26-5.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

1  Opp. at 10.  But in that case, the plaintiffs had demonstrated evidence of actual harms already
2  suffered, and did not rely on purely hypothetical "risks" of future injuries as Plaintiffs do here.
3  *See Covington*, 358 F.3d at 638 ("The Covingtons' factual showing of fires, of excessive
4  animals, insects and other scavengers attracted to uncovered garbage, and of groundwater
5  contamination, evidence a concrete risk of harm to the Covingtons that is sufficient for injury in
6  fact.").  Moreover, the "reasonable concern" standard articulated in *Covington* "ha[s] been
7  abrogated by *Clapper*'s 'certainly impending' and 'substantial risk' standards." *Backus v. Gen.*
8  *Mills, Inc*., 122 F. Supp. 3d 909, 922 (N.D. Cal. 2015).

9  　　　　The other cases upon which Plaintiffs rely are no more helpful.  For instance, in
10  *Reytblatt*, cited in Opp. at 9, the injury was sufficiently actual and imminent because the
11  petitioners had previously filed petitions based on the very information to which they claimed to
12  lack access.  105 F.3d at 721.  Further, *Churchill County v. Babbitt*, 150 F.3d 1072, 1078 (9th
13  Cir. 1998), cited in Opp. at 10-11, expressly limits its standing holding to cases, unlike here, in
14  which "the plaintiff has the procedural right to protect its interest in land management."
15  Similarly, in *In re Zappos.com, Inc*., cited in Opp. at 10, the court's finding was specific to the
16  context of that data breach case.  888 F.3d at 1027-28 (9th Cir. 2018) (finding standing because
17  of the "sensitivity of the stolen data" in the case, which can be used to commit identity theft).
18  Even in that context, though, the court did not rely solely on the imminent risk of identity theft,
19  but grounded its standing finding on the fact that some of the plaintiffs had already experienced
20  harm because of the stolen data.  *Id.*  The instant matter stands in sharp contrast, where Plaintiffs
21  do not allege any concrete harm they have already experienced as a result of the alleged lack of
22  information.  *See* Compl. ¶¶ 20-22.

23  　　　In the absence of allegations that Plaintiffs are actually harmed by the delay of the 2016
24  Rule's disclosure requirements, Plaintiffs have failed to establish the type of actual, imminent
25  injury necessary to support Article III standing.

26  　　　**C.**　　　**Plaintiffs Have Failed To Allege That The Department Caused Any Injury**
27  　　　For many of the same reasons that Plaintiffs fail to allege an injury-in-fact that is concrete
28  and imminent, they also fail to establish that their claimed injury is fairly traceable to the

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

1  Department's conduct.  In their opposition, Plaintiffs claim that their injuries are traceable to the
2  Delay Rule because it delays provisions of the 2016 Rule that "would require schools to provide
3  Individual Plaintiffs with information they should be receiving."  Opp. at 14.  But as discussed
4  above, no statute requires disclosure of the information Plaintiffs claim they "should be
5  receiving," and the 2016 Rule never went into effect to create any potential right to the
6  information.

7  In any event, Plaintiffs' claim that their future injury—the "risk" that they will choose
8  "sub-optimal" educational programs based on a lack of information—was caused by the
9  Department is dependent upon an attenuated chain of contingencies, involving "unfettered
10 choices made by independent actors not before the court[]." *Lujan*, 504 U.S. at 561-62.  As
11 discussed above, events would have to occur (such as adverse actions by state entities or
12 accrediting agencies or determinations regarding compliance with state certifications) that would
13 subject relevant educational programs to the 2016 Rule's disclosure requirements, Plaintiffs
14 would have to not receive the information that the 2016 Rule required to be disclosed (because
15 the educational institutions choose not to make the disclosure and the information is not
16 otherwise available to Plaintiffs), and then Plaintiffs would have to choose a different, "sub-
17 optimal" program that they otherwise would not have chosen based on their lack of information.
18 This causal connection is far too speculative to support standing.  *See Salmon Spawning &*
19 *Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (causal connection based on
20 "attenuated chain of conjecture [is] insufficient to support standing" (citation omitted)).
21 Moreover, the injury would materialize, if at all, based only on the actions of third-party
22 educational institutions, and Plaintiffs have not pled facts to support the conclusion that their
23 educational institutions will respond to the Delay Rule in a manner that will cause Plaintiffs
24 concrete injury.  *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir.
25 2012) (causal chain involving "numerous third parties whose independent decisions collectively
26 have a significant effect on plaintiffs' injuries" is "too weak to support standing at the pleading
27 stage" (citation omitted)).
28

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:18-cv-05173-LB

9

Plaintiffs' opposition brief actually underscores this point. In attempting to draw the requisite causal link, it once again relies on the Delay Rule's discussion of the "effect[s]" of the delay, including its reference to hypothetical injuries to some students who may not receive certain information from their schools. Opp. at 13. But regardless of the "purpose of the disclosure provisions of the [2016 Rule]," *id*. (emphasis omitted), Plaintiffs cannot escape the fact that the Rule regulates only higher education institutions (not students), and that any injury to students is dependent upon the choices of the third-party institutions.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion to dismiss, Defendants respectfully request that the Court grant their motion and dismiss with prejudice Plaintiffs' Complaint.

DATED: November 20, 2018                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
United States Attorney

MARCIA BERMAN
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON, CA Bar No. 267183
R. CHARLIE MERRITT
Trial Attorneys
KAREN S. BLOOM
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov

*Counsel for Defendants*