1  JOSEPH H. HUNT
   Assistant Attorney General
2  MARCIA BERMAN
   Assistant Branch Director
3  KAREN S. BLOOM
   Senior Counsel
4  STUART J. ROBINSON, CA Bar No. 267183
   R. CHARLIE MERRITT
5  Trial Attorneys
   U.S. Department of Justice, Civil Division
6  450 Golden Gate Ave.
   San Francisco, CA 94102
7  Phone: (415) 436-6635; Fax: (415) 436-6632
   Email: stuart.j.robinson@usdoj.gov
8  *Counsel for Defendants*

9

10              **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12  _____
                                              )
13  NATIONAL EDUCATION ASSOCIATION,           )    Case No. 3:18-cv-05173-LB
    et al.,                                    )
14                                             )    **REPLY IN SUPPORT OF**
            Plaintiffs,                        )    **DEFENDANTS' MOTION FOR**
15                                             )    **SUMMARY JUDGMENT**
                v.                             )
16                                             )
17  BETSY DEVOS, in her official capacity as   )    Date:   April 11, 2019
    Secretary of Education, et al.,            )    Time:   9:30a.m.
18                                             )    Place:  San Francisco, CA
            Defendants.                        )    Judge: Hon. Laurel Beeler
19                                             )
    _____

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

    A. The Department Had Good Cause To Waive Negotiated Rulemaking ....................1

    B. Any Error Was Harmless ...........................................................................6

    C. The Court Should Not Vacate The Delay Rule......................................10

CONCLUSION...................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
   631 F.3d 1072 (9th Cir. 2011) ....................................................................... 6, 7, 8

*Cal-Almond, Inc. v. U.S. Department of Agriculture*,
   14 F.3d 429 (9th Cir. 1993) ....................................................................................... 8

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ................................................................................. 3, 4

*Camp v. Pitts*,
   411 U.S. 138 (1973) ................................................................................................... 5

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) ............................................................................... 6, 7

*Idaho Wool Growers Association v. Vilsack*,
   816 F.3d 1095 (9th Cir. 2016) ................................................................................... 8

*Kunaknana v. U.S. Army Corps of Engineers*,
   No. 3:13-cv-00044, 2014 WL 12813625 (D. Alaska July 22, 2014) ........................ 11

*Longworth v. Colvin*,
   No. 14-cv-5711, 2015 WL 4430556 (W.D. Wash. July 20, 2015) ............................ 9

*Ludwig v. Astrue*,
   681 F.3d 1047 (9th Cir. 2012) ................................................................................... 9

*NRDC v. Evans*,
   316 F.3d 904 (9th Cir. 2003) ................................................................................. 1, 3

*NRDC v. U.S. Dep't of Interior*,
   275 F. Supp. 2d 1136 (C.D. Cal. 2002) ................................................................. 11

*Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council*,
   730 F.3d 1008 (9th Cir. 2013) ................................................................................... 6

1

2

*Oregon Trollers Association v. Gutierrez*,

452 F.3d 1104 (9th Cir. 2006) ............................................................ 1, 2, 3, 4

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,

795 F.3d 956 (9th Cir. 2015) .......................................................................... 6

*Pac. Rivers Council v. U.S. Forest Serv.*,

942 F. Supp. 2d 1014 (E.D. Cal. 2013) ........................................................ 11

*Sagebrush Rebellion, Inc. v. Hodel*,

790 F.2d 760 (9th Cir. 1986) .......................................................................... 8

*San Luis & Delta-Mendota Water Auth. v. Locke*,

776 F.3d 971 (9th Cir. 2014) .......................................................................... 5

*Shinseki v. Sanders*,

556 U.S. 396 (2009) ........................................................................................ 6

*United States v. Chem. Found.*,

272 U.S. 1 (1926) ............................................................................................ 5

3

4

5

6

7

8

9

10

11

12

13

14

**Statutes**

15

5 U.S.C. § 553 .................................................................................................. 8

5 U.S.C. § 706 .................................................................................................. 9

20 U.S.C. § 1089 .............................................................................................. 2

20 U.S.C. § 1098a(b) ....................................................................................... 5

42 U.S.C. § 4332(2)(C) ................................................................................... 8

16

17

18

19

20

21

**Other Authorities**

22

23

82 Fed. Reg. 8669 (Jan. 30, 2017) ................................................................. 4

H.R. Conf. Rep. No. 102-447 .......................................................................... 9

H.R. Rep. No. 102-630 .................................................................................. 10

S. Rep. No. 102-204 .................................................................................. 9, 10

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-05173-LB

**INTRODUCTION**

Plaintiffs challenge the procedure by which the Department of Education ("Department") promulgated modifications to its distance education regulations. Specifically, they allege that the Department should have engaged in a negotiated rulemaking process before promulgating a rule delaying the effective date of a 2016 rule regarding state authorization ("Delay Rule"). But as Defendants explained in their motion for summary judgment, ECF No. 41 ("Defs.' Mem."), given the impracticality of completing that time-consuming process before the 2016 Rule would have gone into effect, the Department appropriately invoked the good cause exception in forgoing negotiated rulemaking. Further, given the public participation in the development of the Delay Rule, any error associated with the Department's decision was harmless.

Plaintiffs' opposition brief, ECF No. 45 ("Pls.' Opp."), does not counsel in favor of a different conclusion. Plaintiffs fail to meaningfully distinguish the Ninth Circuit's decision in *Oregon Trollers Association v. Gutierrez*, 452 F.3d 1104 (9th Cir. 2006), which confirms that the Department appropriately invoked the good cause exception. Likewise, their arguments on harmlessness are grounded on immaterial distinctions about the type of procedure at issue, and they do not even attempt to identify how they were prejudiced by the Department's decision. The Court should therefore grant Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**ARGUMENT**

**A.      The Department Had Good Cause To Waive Negotiated Rulemaking**

Plaintiffs first argue that the Department lacked good cause to waive negotiated rulemaking because "nothing in the Delay Proposal or the Department's Brief demonstrates any conflict between the Final Rule and the Department's ability to 'execute its statutory duties.'" Pls.' Opp. at 3 (quoting *NRDC v. Evans*, 316 F.3d 904, 911 (9th Cir. 2003)). This argument, however, misconstrues the Department's position and the governing precedent.

As an initial matter, the Department's decision to invoke the good cause exception was not based on "[a] mere desire to 'address the concerns' of regulated entities." Pls.' Opp. at 4

(citation omitted).  Rather, the Department determined that it was impracticable to conduct

negotiated rulemaking with respect to the Delay Rule, because it would not have been able to do

so between the time it learned of the extent of stakeholder concern regarding the 2016 Rule and

the time the 2016 Rule was set to take effect.  *See* Admin. R. ("AR"), ECF No. 37, at 0003,

0141.  Further, and contrary to Plaintiffs' contention, the Department's assertion of

impracticability was not grounded in "generalized assertions of timeliness," Pls.' Opp. at 5, but

instead in a detailed discussion about the lengthy process required by negotiated rulemaking,

*see* AR at 0003, 0141.  As the Department explained, this process includes public hearings,

identification of issues, solicitation of nominations for non-Federal negotiators, negotiations on

the identified topics, preparation of a notice of proposed rulemaking ("NPRM"), and review by

the Office of Management and Budget.  *Id.* at 0141.

Based on this "thorough[] expla[nation]," the Department's assertion of good cause

should be upheld in light of *Oregon Trollers Association*, 452 F.3d at 1123-24, cited in Defs.'

Mem. at 11-12 (holding agency's description of why it could not undertake notice and comment

before the effective date of certain measures was sufficient to justify a finding of

impracticability).  Plaintiffs' attempts to distinguish *Oregon Trollers Association* are unavailing.

*See* Pls.' Opp. at 5-7.  First, Plaintiffs claim that case is inapposite because "[m]ost notably, in

*Oregon Trollers*, the [agency] was attempting to implement a *statutorily mandated* annual

requirement to finalize a fishery management plan that would 'achieve and maintain, on a

continuing basis, the optimum yield from each fishery,'" and that "[i]n contrast, . . . the

Department has failed to establish how completing negotiated rulemaking before propos[]ing to

delay the State Authorization Rule would interfere with its statutory mandate."  Pls.' Opp. at 6

(quoting 452 F.3d at 1108, 1125) (emphasis in original).  But Plaintiffs elide the statutory

master calendar requirement, 20 U.S.C. § 1089, that looms over the timing of the Department's

Title IV rulemaking activities.  As the Department explained in the Delay Rule:

> [W]e would not be able to complete the negotiated rulemaking process until 2019, so
> regulations resulting from that process will not be effective before July 1, 2020 per
> section 482 of the HEA (20 U.S.C. 1089), also known as the "master calendar
> requirement."  The master calendar requirement . . . provides that a regulatory change

1

2

> that has been published in final form on or before November 1 prior to the start of an
> award year—which begins on July 1 of any given year—may take effect only at the
> beginning of the next award year, or, in other words, on July 1 of the next year.

3   AR at 0141.  Thus, the Department has established that compliance with the negotiated

4   rulemaking requirement "would interfere with the agency's ability to carry out its mission."

5   *Evans*, 316 F.3d at 911; *see also id.* (explaining that "emergencies" are not a necessary

6   prerequisite to good cause because the inquiry "proceeds case-by-case, sensitive to the totality

7   of the factors at play").

8          Second, Plaintiffs argue that *Oregon Trollers Association* is distinguishable because the

9   Department has not in fact offered a thorough explanation for its decision to assert the good

10  cause exception.  Pls.' Opp. at 6.  But the Department's description of the time required to

11  undertake negotiated rulemaking can hardly be characterized as a "generic complaint[] about

12  time pressure and data collection difficulties," Pls.' Opp. at 6 (quoting *Or. Trollers Ass'n*, 452

13  F.3d at 1124), particularly given the Department's explanation of the procedures and time

14  necessary to complete that process, detailed discussion of the concerns raised in the February

15  2018 letters, assessment that they were the catalyst for the delay, and reasonable determination

16  that the process could not be completed in the four months between February 2018 and the

17  effective date of the 2016 Rule.  AR at 0003, 0141.  It was the HEA's negotiated rulemaking

18  requirement, coupled with its "master calendar requirement," applied to the specific time frame

19  in question—and not any generic statement about time pressure—that provided the "context-

20  specific," Pls.' Opp. at 7, basis for the Department's good cause determination.  The

21  Department's description is therefore analogous to the good cause statement in *Oregon Trollers*

22  *Association* and unlike the good cause invocation rejected by the Ninth Circuit in *Evans*, 316

23  F.3d at 912, cited in Pls.' Opp. at 6-8, where the agency "failed to engage in any context-

24  specific analysis" and "repeated the same generic timeliness concerns upon which it has relied

25  each year, namely, that prior notice and comment would cause delay in the implementation of

26  the rules given the time-sensitive data utilized in preparing them."

27         Nor can Plaintiffs advance their argument by relying on *California v. Azar*, 911 F.3d

28  558 (9th Cir. 2018), cited in Pls.' Opp. at 3-4.  In *Azar*, the Ninth Circuit held that the "general

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-05173-LB

policy justifications" cited by the agency in issuing interim final rules without notice and comment were "insufficient to establish good cause," and that "an agency's desire to eliminate more quickly legal and regulatory uncertainty is not by itself good cause." *Id.* at 576. Here, by contrast, the Department's good cause assertion was based on a finding that it could not complete negotiated rulemaking for a non-substantive delay rule in light of other deadlines. AR at 0003, 0141. While the Department hopes that further consideration of the 2016 Rule will reduce regulatory uncertainty, the desire to more quickly eliminate regulatory uncertainty was not, unlike in *Azar*, the basis for the good cause assertion. *See id.* at 0003, 0141. Moreover, whereas in *Azar* the court determined that the agency's good cause assertion was undermined by its willingness to consider post-promulgation comments, *see* 911 F.3d at 576, no such tension exists with respect to the challenged Delay Rule. In short, the Department's decision is much more akin to the agency action in *Oregon Trollers Association*, which remains good law and indicates that the Department's invocation of good cause should be upheld.

Plaintiffs' remaining arguments are likewise without merit. First, Plaintiffs fault the Department for not "provid[ing] . . . evidence" regarding the timing typically associated with negotiated rulemaking. Pls.' Opp. at 7. Plaintiffs point to no authority, however, suggesting that the Department, in the context of a rulemaking, must submit "evidence" to support its description of the negotiated rulemaking process. And even if a negotiated rulemaking of a delay rule would take less than 12 months, as Plaintiffs suggest, they have failed to explain why the Court should discount the Department's assessment of its procedures in this context and instead defer to Plaintiffs' speculation that the Department here could complete the required process in just over four months. Second, Plaintiffs rely on a January 2017 announcement regarding the Department's intent to take regulatory action on the 2016 Rule, Pls.' Opp. at 7-8; *see* 82 Fed. Reg. 8669 (Jan. 30, 2017). But that announcement did not explain how or to what extent the Department was to take action with respect to the 2016 Rule, only that it intended to do so, 82 Fed. Reg. at 8669, and so does nothing to undermine the Department's invocation of good cause here. Third, while Plaintiffs may have preferred that the Department realize the extent of stakeholder concern prior to February of 2018, *see* Pls.' Opp. at 8-9, the fact remains

that the Department did not, and so did not appreciate the need to act until negotiated rulemaking was impracticable, *see* AR 0003, 0141.

Further, insofar as Plaintiffs are suggesting that the Department's stated basis was pretextual, *see* Pls.' Opp. at 9, such a suggestion is inconsistent with the administrative record supporting the Department's decision—*i.e.*, that it was not aware of the extent of stakeholder concern prior to February of 2018—as well as the presumption of regularity that "supports the official acts of public officers," which requires that courts, "in the absence of clear evidence to the contrary, [] presume that they have properly discharged their official duties," *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926).  Plaintiffs also attempt to cast doubt on the validity of the Department's good cause assertion by claiming that the Department failed to "publish[] the basis for such determination in the Federal Register at the same time as the proposed regulations in question are first published."  Pls.' Opp. at 8 (quoting 20 U.S.C. § 1098a(b)).  But Defendants have met their statutory obligation, as the proposal to delay the 2016 Rule expressly includes the grounds for the good cause assertion.  *See* AR at 0003 ("In this instance, the catalysts for the delay are the February 6 and February 7 letters.").  And finally, the Court should give no weight to Plaintiffs' speculation about how the Department "could have used" negotiated rulemaking in the context of a rulemaking regarding gainful employment, Pls.' Opp. at 9, particularly where that separate rulemaking is outside the relevant administrative record, *see, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) ("In general, a court reviewing agency action under the APA must limit its review to the administrative record." (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973))).[1]

---

[1] The Department also notes that the hearings that initiated the negotiated rulemaking process regarding the gainful employment rule took place in July of 2017, well before the Department received the letters in February of 2018 that were the catalyst for the delay rule challenged here. *See* https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/index.html.  Further, Plaintiffs offer no support for their assumption that negotiators selected in connection with the gainful employment rulemaking would be appropriate negotiators for a possible delay of the state authorization rule.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.        Any Error Was Harmless

Plaintiffs also argue that, to the extent the Department erred in waiving negotiated rulemaking, such error was not harmless.  Pls.' Opp. at 10-14.  This argument fails on multiple grounds.

First, Plaintiffs are incorrect in claiming that "the Department[] overstates Plaintiffs' burden in arguing that they must identify 'prejudicial' harm due to the Department's conduct." Pls.' Opp. at 10.  As an initial matter, Plaintiffs appear to conflate the question of which party bears the burden on the issue of harmlessness with the question of what standard of harmlessness applies.  *See* Pls.' Opp. at 9-11.  With respect to the former question, there can be no serious dispute that, in light of the Supreme Court's decision in *Shinseki v. Sanders*, 556 U.S. 396 (2009), Plaintiffs bear the burden of demonstrating prejudice.  *See id.* at 409 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").  And while Plaintiffs attempt to limit *Shinseki*'s application to an "error in the context of administrative proceedings . . . , not agency rulemakings," Pls.' Opp. at 11, nothing in *Shinseki* indicates that the Supreme Court's holding is so limited, and in any event the Ninth Circuit has expressly held that the reasoning of *Shinseki* applies in the rulemaking context, *see Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1092 (9th Cir. 2011); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015) (confirming that *California Wilderness Coalition* "appl[ied] *Shinseki* prejudice review to rulemaking"); *see also Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council*, 730 F.3d 1008, 1020 (9th Cir. 2013).

As to the appropriate standard to apply, Defendants have correctly described the test required by the Ninth Circuit, which turns on whether the error involved a failure to undertake notice and comment in connection with an agency rulemaking.  Defs.' Mem. at 15-16. Specifically, where the error concerns the failure to provide notice and comment, that error is considered harmless "only where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached."  *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220

(9th Cir. 2004) (citations omitted).  "In other contexts, however, [courts'] review for harmless error is more demanding of plaintiffs."  *Id*.

As the alleged violation here did not involve a decision to forgo notice and comment, it is appropriate for the Court to apply the more rigorous standard set forth in *O'Neill*, such that Plaintiffs must "identify the prejudice they have suffered."  *See id.*[2]  Plaintiffs cannot meet this standard.  Indeed, Plaintiffs appear to acknowledge as much: in a footnote, they agree that "NEA did not, at that time, specifically identify the harm that would befall the organization if the Department failed to follow clearly required procedures."  Pls.' Opp. at 10 n.11.[3]  Yet even if the Court were to apply the alternative standard articulated in *O'Neill*, Plaintiffs still cannot carry their burden.  *See* Defs.' Mem. at 16-19.  As to whether any error committed by the Department "clearly had no bearing on the procedure used or the substance of decision," *O'Neill*, 386 F.3d at 1220, Plaintiffs claim only that "because the Department's errors had an unmistakable 'bearing on the procedure used,' *i.e.*, eliminating the negotiated rulemaking process, the Department's conduct was not 'harmless.'"  Pls.' Opp. at 10.  Such a conclusory assertion, which wholly ignores whether the Department's decision had a "bearing on . . . the substance of [the] decision," *O'Neill*, 386 F.3d 1186, 1220, is plainly inadequate.  *See also* Defs.' Mem. at 17.

---

[2] Plaintiffs argue that the Court must apply the "clearly [] no bearing on the procedure used or the substance of decision reached" standard, because "[t]here is simply no indication in *O'Neill* that the failure to conduct negotiated rulemaking is separate from the 'rulemaking context.'" Pls.' Opp. at 10.  Yet the Ninth Circuit in *O'Neill* stated that test is applicable where an agency "fail[ed] to provide notice and comment," without suggesting that other aspects of rulemaking (such as negotiated rulemaking) are subject to the same standard.  *See* 386 F.3d at 1220. Moreover, it is impossible to reconcile Plaintiffs' position that negotiated rulemaking should be treated the same as notice and comment for purposes of deciding what standard of harmless error to apply, *see* Pls.' Opp. at 10-11, with their repeated emphasis on the fact that negotiated rulemaking and notice and comment are separate procedures, *see id.* at 10-13.

[3] Although Plaintiffs assert that "[i]t expands the harmless error requirement past all reasonable bounds to suggest Plaintiffs must identify with specificity the prejudicial error from the Department's failure to use the required process for public involvement," *id.* at 10-11 n.11, their generalized complaint does not lessen the binding force of the Ninth Circuit's precedent, which requires just such a showing, *Cal. Wilderness Coalition*, 631 F.3d at 1092; *O'Neill*, 386 F.3d at 1220.

Further detracting from Plaintiffs' position is the clear weight of Ninth Circuit authority, which confirms that any error committed by the Department was harmless, particularly in light of the robust public participation associated with the Delay Rule.  *See* Defs.' Mem. at 16-19. Plaintiffs appear to rely on only one case in support of their argument: *California Wilderness Coalition v. U.S. Department of Energy*, 631 F.3d 1072 (9th Cir. 2011), cited in Pls.' Opp. at 14. The portion of that case relied on by Plaintiffs, however, is inapposite.  In *California Wilderness Coalition*, the court held that an agency's failure to consult with certain States was not harmless error, because the States had demonstrated that they were deprived of an opportunity to present their views to the agency before it reached its decision.  *See id.*  But here, the relevant stakeholders, including Plaintiffs themselves, were afforded the opportunity to—and did in fact—present their views on the proposed delay before the Department made its determination. *See* AR at 0007-0139.

By contrast, Plaintiffs have failed to distinguish the cases relied on by Defendants, such as *Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760, 765 (9th Cir. 1986), cited in Defs.' Mem. at 17, 19; *Cal-Almond, Inc. v. U.S. Department of Agriculture*, 14 F.3d 429 (9th Cir. 1993), cited in Defs.' Mem. at 17, 19; and *Idaho Wool Growers Association v. Vilsack*, 816 F.3d 1095 (9th Cir. 2016), cited in Defs.' Mem. at 16-17, 19.  Plaintiffs' assertion that "none of the [] cases relied on by the Department are about an agency's complete failure to use a statutorily required procedure," Pls.' Opp. at 12, is simply inaccurate.  For example, *Cal-Almond* involved an agency's failure to undertake notice and comment, a procedure required by the APA, 5 U.S.C. § 553.  *See* 14 F.3d at 440-41.  Similarly, *Idaho Wool Growers Association* concerned an agency's failure to abide by a statutory consultation requirement.  *See* 816 F.3d at 1102-03 (discussing duty to consult required by 42 U.S.C. § 4332(2)(C)).  And even less persuasive is Plaintiffs' attempt to distinguish these cases on the ground that "[n]one of these cases contemplate an agency *wholly disregarding* a Congressionally-mandated procedure designed to *supplement* the process that the agency used."  Pls.' Opp. at 13 (emphasis in original).  Plaintiffs fail to explain why the harmless error analysis should categorically turn on whether a required procedure "supplement[s]" another process.  *See id.*  Nor can they, particularly given the well-established

principle that "[h]armless error is a case-by-case, fact-specific inquiry." *Longworth v. Colvin*, No. 14-cv-5711, 2015 WL 4430556, at *2 (W.D. Wash. July 20, 2015) (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1053-54 (9th Cir. 2012)).[4]  Indeed, by Plaintiffs' reasoning, a decision to forgo negotiated rulemaking can never constitute harmless error.  No precedent exists for such a sweeping proposition, and is in fact contradicted by the text of the APA itself.  5 U.S.C. § 706 (requiring that "due account shall be taken of the rule of prejudicial error").

Plaintiffs' remaining arguments are without merit.  First, invoking the legislative history of the HEA, Plaintiffs contend that any error associated with the Department's decision to waive negotiated rulemaking was prejudicial in light of "Congress's mandate that the Department conduct negotiated rulemaking *in addition to* notice and comment rulemaking."  Pls.' Opp. at 11 (emphasis in original); *see id.* at 12 ("The legislative history establishes that negotiated rulemaking is to *supplement*, not merely repeat, the benefits of notice and comment.") (emphasis in original).  But again, Plaintiffs offer no support for their proposition that a finding of harmlessness depends on whether a waived procedure "supplement[s]" another process.  *See id.* And in any event, Plaintiffs misconstrue the relevant legislative history, which does not define negotiated rulemaking solely as a supplement to notice and comment and, when read in context, makes clear that Congress imposed the negotiated rulemaking requirement to advance three goals:  "First, it increases the flow of information between the Department and those who must implement the programs.  Second, it leads to fairer and more appropriate rules.  Third, it speeds up the process by which regulations are published."  S. Rep. No. 102-204, at 58 (1991); *see also* H.R. Conf. Rep. No. 102-447, at 85 (1992) ("The Committee expects the individuals and groups involved in this negotiation will include representatives of all sectors of postsecondary

---

[4] The need for a "fact-specific inquiry" addresses Plaintiffs' concern that "[i]f truly 'harmless' to bypass negotiated rulemaking, the Department could always do so, relying on the notice and comment process to obtain public involvement."  Pls.' Opp. at 11.  The Department is not suggesting that it can always forgo negotiated rulemaking if a rule has undergone notice and comment.  Rather, the Department's position is that in this specific context—where the relevant stakeholders have shared their views with the Department, and where the rule does not concern a substantive policy issue but rather a question of delay, such that negotiation is unlikely to lead to either consensus or contribute to a separate notice and comment process more generally—a finding of harmlessness is warranted.

education."); H.R. Rep. No. 102-630, at 516 (1992) (Conf. Rep.) (confirming that Congress intended participation from "students and student advocates from all sectors of postsecondary education"). Here, the Delay Rule, which was promulgated after input from students, States, and institutions of higher education, is consistent with each of these goals. *See also* Defs.' Mem. at 18-19.

Finally, Plaintiffs cannot demonstrate any prejudicial error by claiming that "delay or no delay is not the only question." Pls.' Opp. at 13. Plaintiffs' speculation that "stakeholders *might have* reached consensus on a different approach for clarification or agreed that a shorter or substantively limited delay was appropriate," *id.* (emphasis added), is insufficient to carry Plaintiffs' burden under any standard, particularly given the substance of the comments submitted in response to the Department's NPRM, *see, e.g.*, AR at 0035 (comment from Plaintiff NEA that "we strongly urge the Department not to finalize the delay and instead to permit the Rule to go into effect on July 1, 2018); AR at 0052 (comment from WICHE Cooperative for Educational Technologies stating that it supports the delay as proposed; "[w]e agree that non-regulatory guidance from ED is unlikely to address the current gap between institutional understanding of those rules and the Department's expectations for compliance").[5]

## C.     The Court Should Not Vacate The Delay Rule

In the event the Court finds both that the Department erred in waiving negotiated rulemaking and that such an error was prejudicial, the Court must consider whether vacatur is the appropriate remedy. According to Plaintiffs, "[t]he remedy of vacatur is particularly appropriate in this case in light of the 'serious' nature of the Department's actions in circumventing Congressionally mandated process." Pls.' Opp. at 14. This argument, however, ignores the procedural nature of the error, as well as the public participation that contributed to the Delay

---

[5] In a footnote, Plaintiffs assert that "[n]otice and comment on the Delay NPRM was hardly a model of public participation." Pls.' Opp. at 13 n.13. Notwithstanding the fact that the NPRM was apparently sufficient for both Plaintiffs and their counsel (among others) to submit comments, the question is not whether the notice and comment process was a "model of public participation," but whether, given the level of public participation that actually occurred, Plaintiffs can demonstrate prejudice as a result of the Department's decision. As discussed above and in Defendants' opening brief, Plaintiffs cannot carry their burden.

Rule, both of which lessen the seriousness of any error committed by the Department. *Cf. Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1021 (E.D. Cal. 2013); *NRDC v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1144-45 (C.D. Cal. 2002). Further, vacating the Delay Rule is likely to cause significant confusion and therefore be disruptive. AR at 0139, 0141. *See Kunaknana v. U.S. Army Corps of Engineers*, No. 3:13-cv-00044, 2014 WL 12813625, at *3 (D. Alaska July 22, 2014). Therefore, if the Court finds that the Department committed prejudicial error, it should remand without vacatur to allow the Department to correct any deficiencies.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion for summary judgment, Defendants respectfully request that the Court grant their motion and enter judgment in their favor.

DATED: March 11, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON, CA Bar No. 267183
R. CHARLIE MERRITT
Trial Attorneys
KAREN S. BLOOM
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov

*Counsel for Defendants*